## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Hon. Marianne O. Battani |
| In re: Side Door Latches | Case Nos. 5:17-cv-13005 2:17-cv-04302 |
| THIS DOCUMENT RELATES TO: Automobile Dealership Actions | |

## AUTOMOBILE DEALER PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH BROSE DEFENDANTS AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS

Pursuant to Federal Rule of Civil Procedure 23(c) and (e), Automobile Dealer Plaintiffs hereby move the Court for an Order to:

(1)     Preliminarily approve the proposed settlement of the above-captioned litigation with Brose Schließsysteme GmbH & Co. Kommanditgesellschaft and Brose North America (collectively, "BROSE Defendants");

(2)     Provisionally approve the proposed Settlement Class;

(3)     Stay the proceedings against the BROSE Defendants in accordance with the terms of the Settlement Agreement;

(4)     Authorize Automobile Dealer Plaintiffs to provide notice of the Settlement Agreement to members of the Settlement Class in a form approved by the Court at a later time; and

(5)     Appoint Cuneo, Gilbert & LaDuca, PLLP, Barrett Law Group, P.A., and Larson King, LLP as Settlement Class Counsel for purposes of this settlement.

In support of this Amended Motion, Automobile Dealer Plaintiffs rely upon and incorporate by reference herein the facts and legal arguments set forth in the accompanying Memorandum of Law.

The parties do not request a hearing for this motion.  The BROSE Defendants consent to this motion and to the entry of the proposed order.

Dated: August 17, 2018

By: /s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662) 834-2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Side Door Latches | Case Nos. 5:17-cv-13005 2:17-cv-04302 |
| THIS DOCUMENT RELATES TO | |
| Automobile Dealership Actions | |

**AMENDED MEMORANDUM IN SUPPORT OF AUTOMOBILE
DEALER PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED SETTLEMENT WITH BROSE AND
PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS**

## STATEMENT OF ISSUES PRESENTED

1. Whether Automobile Dealer Plaintiffs' ("ADs") settlement with Brose Schließsysteme GmbH & Co. Kommanditgesellschaft and Brose North America (collectively, "BROSE" or "BROSE Defendants"), embodied in the Settlement Agreement entered into on June 14, 2018 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate and should be preliminarily approved;

2. Whether the Court should provisionally certify the Settlement Class under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3);

3. Whether the Court should stay the proceedings by ADs against BROSE in accordance with the terms of the Settlement Agreement;

4. Whether the Court should authorize Settlement Class Counsel to provide notice of the Settlement Agreement to Members of the Settlement Class (as defined in the Settlement Agreement) at a later time;[1] and

5. Whether the Court should appoint Interim Co-Lead Class Counsel for ADs as Settlement Class Counsel for this settlement.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)

*Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006 (E.D. Mich. Sept. 13, 2013)

*Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013)

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Corrugated Container Antitrust Litig.*, 1981 WL 2093 (S.D. Tex. Jan. 27, 1981)

*In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393 (S.D. Ohio 2007)

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003)

*In re Packaged Ice Antitrust Litig.*, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)

*Sheick v. Auto Component Carrier LCC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010)

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT .......... 2

ARGUMENT ........................................................................................................ 6

I.     Preliminary Approval Should be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ................................... 6

     A.    The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation. ........................................ 9

     B.    The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel. ........................... 12

II.    The Proposed Settlement Class Should be Provisionally Certified Pursuant to Rule 23. ................................................................................................... 13

     A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a). ...................................................................................................... 14

          i.    The Proposed Settlement Class is so Numerous That it is Impracticable to Bring All Class Members Before the Court. ........ 15

          ii.    Automobile Dealer Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions. ................................................................................... 15

          iii.    Automobile Dealer Plaintiff Class Representatives' Claims are Typical of the Claims of the Members of the Proposed Settlement Class. ................................................................................... 17

          iv.    Proposed Settlement Class Counsel and Automobile Dealer Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class. ................. 18

     B.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3). .................................................................................................. 19

          i.    Common Questions of Law and Fact Predominate. ...................... 20

          ii.    A Class Action is the Superior Method to Adjudicate These Claims. ...................................................................................... 22

     C.    The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2). .................................................................................................. 23

III.    Notice to the Class Members. .................................................................. 23

CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agretti v. ANR Freight Sys., Inc.,*
  982 F.2d 242 (7th Cir. 1992) ................................................................. 8

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ................................................................ 21, 22, 24

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds,*
  133 S.Ct. 1184 (2013) ..................................................................... 16, 22

*Bacon v. Honda of America Mfg., Inc.,*
  370 F.3d 565 (6th Cir. 2004) ............................................................... 17

*Blades v. Monsanto Co.,*
  400 F.3d 562 (8th Cir. 2005) ............................................................... 23

*Bobbitt v. Acad. of Reporting,*
  2009 WL 2168833 (E.D. Mich. Jul. 21, 2009) .................................... 8

*Bowers v. Windstream Ky. East, LLC,*
  Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242
  (W.D. Ky. Nov. 1, 2013) ..................................................................... 14

*Cason-Merenda v. VHS of Mich., Inc.,*
  Case No. 06-15601, 2013 U.S. Dist. LEXIS 131006
  (E.D. Mich. Sept. 13, 2013) ............................................. 15, 17, 19, 21

*Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.,*
  803 F.2d 878 (6th Cir. 1986) ................................................................. 9

*Comcast Corp. v. Behrend,*
  133 S.Ct. 1426 (2013) ........................................................................ 22

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,*
  502 F.3d 91 (2d Cir. 2007) ................................................................. 23

*Date v. Sony Elecs., Inc.,*
  Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095
  (E.D. Mich. July 31, 2013) ................................................................. 17

*Dillworth v. Case Farms Processing, Inc.,*
  No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446
  (N.D. Ohio Mar. 8, 2010) ................................................................... 24

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008) ............................................................... 25

*Gautreaux v. Pierce,*
  690 F.2d 616 (7th Cir. 1982) ............................................................... 9

*Golden v. City of Columbus,*
    404 F.3d 950 (6th Cir. 2005) ...................................................................... 16

*Griffin v. Flagstar Bancorp, Inc.,*
    Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
    (E.D. Mich. Dec. 12, 2013) ..................................................... 7, 14, 17, 19

*Hyland v. Homeservices of Am., Inc.,*
    Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892
    (W.D. Ky. Nov. 6, 2008) .............................................................................. 16

*In re Aluminum Phosphide Antitrust Litig.,*
    160 F.R.D. 609 (D. Kan. 1995) ................................................................... 17

*In re Am. Med. Sys., Inc.,*
    75 F.3d 1069 (6th Cir. 1996) ................................................................ 17, 19

*In re Ampicillin Antitrust Litig.,*
    82 F.R.D. 652 (D.D.C. 1979) ...................................................................... 13

*In re Automotive Wire Harness Sys. Antitrust Litig.,*
    Case No. 12-MD-02311 (E.D. Mich. Mar. 8, 2012) ................................... 13

*In re Blood Reagents Antitrust Litig.,*
    283 F.R.D. 222 (E.D. Pa. 2012) .................................................................. 23

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ....................................................... passim

*In re Chambers Dev. Sec. Litig.,*
    912 F. Supp. 822 (W.D. Pa. 1995) .............................................................. 11

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.,*
    248 F.R.D. 483 (E.D. Mich. 2008) .............................................................. 15

*In re Dun & Bradstreet Credit Servs. Customer Litig.,*
    130 F.R.D. 366 (S.D. Ohio 1990) ............................................................... 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841
    (N.D. Cal. June 5, 2006) .............................................................................. 17

*In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.,*
    481 F.3d 1119 (9th Cir. 2007) .................................................................... 11

*In re Foundry Resins Antitrust Litig.,*
    242 F.R.D. 393 (S.D. Ohio 2007) ........................................................ passim

*In re Packaged Ice Antitrust Litig.,*
    Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255
    (E.D. Mich. Feb. 22, 2011) ................................................................. passim

*In re Packaged Ice Antitrust Litig.,*
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .............. 9

*In re Potash Antitrust Litig.,*
   159 F.R.D. 682 (D. Minn. 1995) ............................................................... 21

*In re Pressure Sensitive Labelstock Antitrust Litig.,*
   584 F. Supp. 2d 697 (M.D. Pa. 2008) ...................................................... 12

*In re Rent-Way Sec. Litig.,*
   305 F.Supp.2d 491 (W.D. Pa. 2003) ......................................................... 12

*In re Scrap Metal Antitrust Litig.,*
   527 F.3d 517 (6th Cir. 2008) ......................................................... 21, 22, 23

*In re Southeastern Milk Antitrust Litig.,*
   Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223
   (E.D. Tenn. Sept. 7, 2010) ....................................................................... 16

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,*
   Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714
   (E.D. Ohio Oct. 19, 2001) .......................................................................... 9

*In re Universal Serv. Fund Tel. Billing Practices Litig.,*
   219 F.R.D. 661 (D. Kan. 2004) ................................................................ 24

*In re Uranium Antitrust Litig.,*
   617 F.2d 1248 (7th Cir. 1980) .................................................................. 13

*In re Urethane Antitrust Litig.,*
   251 F.R.D. 629 (D. Kan. 2008) ................................................................ 23

*In re Visa Check/MasterMoney Antitrust Litig.,*
   280 F.3d 124 (2d Cir. 2001) ...................................................................... 23

*In re Vitamins Antitrust Litig.,*
   209 F.R.D. 251 (D.D.C. 2002) .................................................................. 22

*In re Warfarin Sodium Antitrust Litig.,*
   391 F.3d 516 (3d Cir. 2004) ...................................................................... 11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
   722 F.3d 838 (6th Cir. 2013) ............................................................. passim

*Int'l Union, UAW v. Ford Motor Co.,*
   Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471
   (E.D. Mich. July 13, 2006) .................................................................... 8, 18

*IUE-CWA v. Gen. Motors Corp.,*
   238 F.R.D. 583 (E.D. Mich. 2006) ........................................................ 8, 13

*Karkoukli's, Inc. v. Dohany,*
   409 F.3d 279 (6th Cir. 2005) .................................................................... 25

*Leonhardt v. ArvinMeritor, Inc.,*
   581 F. Supp. 2d 818 (E.D. Mich. 2008) .................................................. 14

*Levva v. Medline Indus, Inc.,*
   716 F.3d 510 (9th Cir. 2013) .................................................................... 22

*Marcus v. Dep't of Revenue*,
   206 F.R.D. 509 (D. Kan. 2002) ................................................................. 20

*Miller v. Univ. of Cincinnati*,
   241 F.R.D. 285 (S.D. Ohio 2006) ............................................................. 16

*Powers v. Hamilton Cnty. Public Defender Comm.*,
   501 F.3d 595 (6th Cir. 2007) ..................................................................... 21

*Rankin v. Rots*,
   No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706
   (E.D. Mich. June 28, 2006) .......................................................................... 9

*Reed v. Advocate Health Care*,
   268 F.R.D. 573 (N.D. Ill. 2009) ............................................................... 23

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................ 11

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ..................................................................... 20

*Sheick v. Auto Component Carrier LCC*,
   Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411
    (E.D. Mich. Oct. 18, 2010) ........................................................................ 13

*Stout v. J.D. Byrider*,
   228 F.3d 709 (6th Cir. 2000) ..................................................................... 19

*Thacker v. Chesapeake Appalachia, L.L.C.*,
   259 F.R.D. 262 (E.D. Ky. 2009) ........................................................ 14, 25

*UAW v. Gen. Motors. Corp.*,
   497 F.3d 615 (6th Cir. 2007) ....................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011) ............................................................................... 15

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 15, 16

Fed. R. Civ. P. 23(a) ............................................................................ 15, 16, 20

Fed. R. Civ. P. 23(a)(1) .................................................................................. 17

Fed. R. Civ. P. 23(a)(2) .................................................................................. 19

Fed. R. Civ. P. 23(a)(3) .................................................................................. 19

Fed. R. Civ. P. 23(a)(4) .................................................................................. 20

Fed. R. Civ. P. 23(b)(2) .................................................................................. 25

Fed. R. Civ. P. 23(b)(3)............................................................................21, 22, 24, 25

Fed. R. Civ. P. 23(b)(3)(D) ...............................................................................25

Fed. R. Civ. P. 23(c)(2)(B) ...............................................................................25

Fed. R. Civ. P. 23(e) .........................................................................................25

Fed. R. Civ. P. 23(e)(1) .....................................................................................25

Fed. R. Civ. P. 23(g)..........................................................................................21

**Cases**

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (2d ed. 1990)................................................................................................8

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (4th ed. 2005)....9, 10, 14, 18

Herbert B. Newberg & Alba Conte, Newberg on Class Actions (3d ed. 1992) ....................23

Manual For Complex Litigation (Fourth) (2004)...................................... 9, 15

Manual for Complex Litigation (Third) (1995) .........................................10

Manual for Complex Litigation (Second) (1986) ...........................................8

Automobile Dealership Plaintiffs ("ADs"), on behalf of themselves and all others similarly situated, by and through undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with BROSE and provisional certification of the proposed Settlement Class.

## PRELIMINARY STATEMENT

Side Door Latches and Latch Minimodules are among the Automotive Parts at issue in these coordinated proceedings, *In re Automotive Parts Antitrust Litigation* ("Auto Parts"), MDL No. 2311. For this settlement, the following Automotive Parts are at issue:

> A "Side-Door Latch" secures an automotive door to a vehicle body and may be locked to prevent unauthorized access to a vehicle. A "Latch Minimodule" includes the Side-Door Latch and all of the related mechanical operating components, including the electric lock function

Settlement Agreement ¶ 8.  As the Court knows, these coordinated actions involve alleged conspiracies among some of the automotive industry's largest manufacturers, marketers, and sellers of Side Door Latches and Latch Minimodules to fix the prices, rig bids, and allocate the market and customers in the United States for such products. For pretrial purposes, this Court previously consolidated and coordinated the ADs cases. The Court also appointed the undersigned firms Interim Co-Lead Class Counsel and Interim Liaison Counsel for the Automobile Dealer Actions in the Master Docket for MDL No. 2311. See Case Management Order, Master Docket No. 12-md-2311 (Aug. 7, 2012, ECF no. 271). Throughout these cases, Interim Co-Lead Class Counsel has represented the interests of ADs in these actions, including in settlement negotiations with BROSE.  This proposed settlement is a result of those efforts.

The United States Department of Justice ("DOJ") has been investigating conspiracies in the market for automotive parts since at least as early as February 2010, and the Federal Bureau of Investigation ("FBI") has conducted an ongoing federal antitrust investigation into price fixing, bid rigging and other anticompetitive conduct in the automotive parts industry.  The settlement between

the ADs and BROSE will result in a payment of $720,000.00 to ADs.  The settlement also requires BROSE to provide cooperation in the form of attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in these cases.  Such cooperation will assist the ADs in this litigation and the ability to obtain such information informally is quite valuable.

As with other AD settlements, BROSE's sales will remain in the case for purposes of computing the treble damages claim against any non-settling Defendants and shall be part of any joint and several liability claims against future Defendants. *See* Settlement Agreement ¶ 55.  The ADs and the proposed Settlement Class retain their ability to recover from the remaining or future Defendants, the entire damages caused by the alleged conspiracies, even those attributable to BROSE, less only the amount paid by BROSE in settlement.

ADs and their Interim Lead Counsel believe, for all the reasons set forth, the settlement with BROSE is in the best interest of the proposed members of the Settlement Class and merits the Court's preliminary approval. ADs therefore request the entry of an Order:

1.  Preliminarily approving the Settlement;

2.  Provisionally certifying the proposed Settlement Class;

3.  Staying the proceedings against BROSE in accordance with the terms of the Settlement Agreement;

4.  Authorizing Settlement Class Counsel to defer providing notice of the Settlement Agreement to class members until a later time; and

5.  Appointing Interim Co-Lead Class Counsel for ADs as Settlement Class Counsel for this Settlement.

**THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT**

The Settlement Agreement with BROSE arises from extensive arm's length and good faith negotiations.  In addition to substantial litigation with the Defendants in this MDL, counsel

2

participated in fact-gathering sessions and informational meetings, as well as negotiations that took place through telephone calls, in-person meetings, and other communications.

**Settlement Class**:  The Settlement Agreement defines the Settlement Class in this action as:

All Automobile Dealerships that, during the period from and including January 1, 2004 through June 14, 2018, (a) indirectly purchased Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant, or (b) purchased Vehicles for resale that contained Side-Door Latch(es) and/or Latch Minimodul(es) manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities.

Settlement Agreement ¶ 13.

**Settlement Amount**: BROSE has agreed to pay $720,000.00 within thirty (30) days following the later of (i) the entry of an order preliminarily approving the Agreement or (ii) the date BROSE is provided with the account number, account name and wiring transfer information for the Escrow account.  *Id.* ¶ 26.  The Settlement Amount shall be paid into an interesting-bearing escrow account at Huntington National Bank.  *Id.* ¶ 27.

**Cooperation:** BROSE has agreed to provide cooperation to the proposed Settlement Class. A general summary of BROSE's cooperation obligations is provided below. The full extent of this cooperation is set forth in more detail in Section F of the Settlement Agreement.  BROSE's obligation to cooperate includes, among other things, the duty to provide:

36. *Identity of Individuals*. Within five (5) business days of the Execution Date of this Agreement, Counsel for Brose shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Brose who: (1) were interviewed and/or prosecuted by any Government Entity in connection with alleged price-fixing, bid rigging and market allocation of Side-Door Latches and Latch Minimodules; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Side-Door Latches and Latch Minimodules; and/or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Side-Door Latches and Latch Minimodules, without specifying which of these categories applies to any individual..

3

37. *Transactional Data*. Upon written request following preliminary approval by the Court of this Agreement, Brose will use its best efforts to complete the production of transactional data, no later than thirty (30) days after receipt of such request, concerning Brose's sales of Side-Door Latches and Latch Minimodules sold to Original Equipment Manufacturers, or other purchasers of Side-Door Latches and Latch Minimodules from January 1, 2002 through the Execution Date, for use in vehicles sold in the United States. In addition, Brose will provide, in response to a written request from Settlement Class Counsel, a single production of electronic transactional data generated during the two years after the Execution Date of this Agreement concerning Side-Door Latches and Latch Minimodules for use in vehicles sold in the United States, as it exists in Brose's electronic databases at the time of the request, within sixty (60) days of the receipt of such request. Brose shall preserve such post-Execution Date transactional data until two (2) years after the Execution Date of this Agreement. Brose will produce transaction data only from existing electronic transaction databases, except that, to the extent Brose has not recorded or maintained electronic transaction data for any period between January 1, 2002 and two (2) years from the Execution Date of this Agreement, then Brose will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transaction database.

39. *Documents*. Upon written request following preliminary approval by the Court of this Agreement, Brose will use its best efforts to complete the production of the following Documents concerning Side-Door Latches and Latch Minimodules for use in vehicles sold in the United States, including English translations, to the extent they exist as of the Execution Date, no later than forty-five (45) days after receipt of such written request: (1) non-privileged Documents provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Side-Door Latches and Latch Minimodules; (2) non-privileged Documents concerning a communication, meeting, or agreement regarding Side-Door Latches and Latch Minimodules, by any employee, officer or director of Brose with any employee, officer, or director of another manufacturer or seller of Side-Door Latches and Latch Minimodules, but that were not provided to or seized by Government Entities; (3) Documents sufficient to show Brose's general methodology for determination of their prices for Side-Door Latches and Latch Minimodules; (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Side-Door Latches and Latch Minimodules, including any Annual Price Reduction (APR) Documents; and (5) Documents or non-public information regarding collusion with respect to any other automotive part that is the subject of the MDL Litigation as of the Execution Date, to the extent already collected and reviewed by Brose's counsel. As to Documents in Brose's possession, custody, or control that are not listed above, Brose will consider in good faith any reasonable request by Automobile Dealership Plaintiffs to collect and produce such Documents provided the request would not impose an undue burden on Brose.

41. *Attorney Proffers and Witness Interviews*. Additionally, Brose shall use its best efforts to cooperate with Settlement Class Counsel as set forth in Paragraphs 35 - 48

4

(a) Brose's counsel will make themselves available at a mutually agreed location in the United States for up to two (2) meetings of one business day each within thirty (30) business days after preliminary approval by the Court of this Agreement to provide an attorneys' proffer of facts known to them concerning Side-Door Latches and Latch Minimodules. Thereafter, Brose's counsel will make themselves available for reasonable follow-up conversations in connection with the attorney's proffers, and will use best efforts to respond to questions posed by Settlement Class Counsel.

(b) Upon written request following preliminary approval by the Court of this Agreement, Brose further agrees to make six (6) persons available for interviews and depositions, provide six (6) declarations or affidavits from the same persons, and make those persons available to testify at trial. The interviews and depositions shall be conducted at a mutually agreed-upon location in the United States, and each deposition shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days.

(c) In addition to its Cooperation obligations set forth herein, Brose agrees to produce through affidavit(s), declaration(s), and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any Documents or transactional data produced or to be produced by Brose. Settlement Class Counsel agrees to use their best efforts to obtain stipulations that would avoid the need to call Brose witnesses at trial for the purpose of obtaining such evidentiary foundations.

Settlement Agreement at ¶¶ 36-37, 39, 41.

**Released Claims**: The Settlement Agreement releases only BROSE (and its respective past and present direct and indirect parents, subsidiary companies, and affiliates, and all other partnerships or corporations with whom any of the foregoing have been, or are now, affiliated including all of the foregoing's respective predecessors, successors and assigns) from, *inter* alia, all Settlement Class Members and their respective Releasors' claims arising out of or relating in any way to any conduct alleged in the Consolidated Amended Complaint, or any act or omission of BROSE, concerning Side Door Latches and Latch Minimodules. *Id* at ¶ 24.

The release does not include: : (1) any claims made by direct purchasers of Side-Door Latches and Latch Minimodules; (2) any claims made by end-payors that are indirect purchasers of Side-Door Latches and Latch Minimodules; (3) any claims made by truck and equipment dealerships that are indirect purchasers of Side-Door Latches and Latch Minimodules; (4) any claims made by any

State, State agency, or instrumentality or political subdivision of a State as to government purchases and/or penalties; (5) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to Side-Door Latches and Latch Minimodules; (6) claims concerning any automotive part other than Side-Door Latches and Latch Minimodules; (7) claims under laws other than those of the United States relating to purchases of Side-Door Latches and Latch Minimodules made by any Releasor outside of the United States; and (8) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *Id.*

## ARGUMENT

The Settlement Agreement is fair, reasonable, and adequate—resulting from extensive, arm's length negotiations by experienced counsel—and is an excellent resolution of the proposed Settlement Class' claims that maximizes their recovery and guarantees cooperation by BROSE that may prove valuable in the continued prosecution of ADs' claims in this multidistrict litigation.

**I.    Preliminary Approval Should Be Granted Because the Proposed Settlement Falls Well Within the Range of Possible Approval.**

There is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp, Inc.*, Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) (citing *UAW v. Gen. Motors. Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). "This policy applies with equal force whether the settlement is partial, involving only some of the defendants, or complete." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *44 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *see also Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'"

6

(quoting MANUAL FOR COMPLEX LITIGATION (SECOND) § 30.46 (1986)). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522, at 225-26 (2d ed. 1990) (citing 1983 Advisory Committee Notes); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.12 (2004) ("*Manual*") ("[S]ettlement should be explored early in the case.").

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement Class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval to the settlement. *See Manual* § 21.63; *see also Bobbitt v. Acad. of Reporting*, 2009 WL 2168833, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 30.41 at 237; *see also Int'l Union, UAW v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. July 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Industrial Workers of Am.*, 803 F.2d 878, 880 (6th Cir. 1986). Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2005) ("*Newberg*") (collecting cases); *cf. Rankin v. Rots*, No. 02-cv-71045, 2006 U.S. Dist. LEXIS 45706, at *9 (E.D. Mich. June 28, 2006) ("[T]he only

7

question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.") (internal quotation marks omitted).

In considering whether to grant preliminary approval, the court is not required at this point to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, Case No. 1:01-CV-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the proposed preliminary approval is solely to provide authority for notifying the class of the terms of the settlement agreement to set the stage for review of its final approval. *Id.*; *Newburg* § 11.25. Consequently, courts generally engage only in a limited inquiry to determine whether a proposed settlement falls within the range of possible approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at *17- 18 (preliminary approval may be based on "informal presentations" because of "substantial judicial processes that remain") (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 235 (1995)). *See also In re Packaged Ice Antitrust Litig.,* No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010), *quoting Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (inquiry limited to settlement's potential for final approval and propriety of class notice and fairness hearing).

In evaluating whether a settlement is fair, reasonable and adequate, courts in the Sixth Circuit consider a number of factors:

> (1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *46-47 (quotation marks and citations omitted). A court is not required, at the preliminary approval stage, to determine whether it ultimately will finally approve the settlement. Nevertheless, as set forth in detail below, preliminary consideration of the factors a court considers when evaluating the fairness of a settlement for purposes of deciding whether to grant final approval supports this Court's granting preliminary approval of the Settlement Agreement.

> A.   **The Settlement Agreement Achieves an Excellent Result for the Proposed Settlement Class, Particularly Given the Expense, Duration, and Uncertainty of Continued Litigation.**

Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard*, 292 F. Supp. at 639); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003) ("*Cardizem*") ("Moreover, the complexity of this case cannot be overstated. Antitrust class actions are inherently complex"). Motions have been vigorously contested, and the discovery process would be all the more complicated due to the unique issues that attend discovery against foreign parties.[2]

BROSE has asserted various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See, e.g., Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *53-54 (noting the "undeniable inherent

---

[2] Because Interim Co-Lead Class Counsel may have to litigate against other defendants through trial and appeal, their duties to the Class preclude a more detailed discussion of their potential litigation risks.

risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracies as alleged in the Complaint can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages"). *Id.* Given this uncertainty, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Moreover, given the stakes involved, an appeal is nearly certain to follow regardless of the outcome at trial. This creates additional risk, as judgments following trial may be overturned on appeal. *See, e.g., In re Farmers Ins. Exchange, Claims Representatives' Overtime Pay Litig.*, 481 F.3d 1119 (9th Cir. 2007) ($52.5 million class action judgment following trial reversed on appeal); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed and judgment entered for defendant). And even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risks in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable than recovery today. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Classes than receiving the benefits of the proposed Settlement at this time"). Hence, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem*, 218 F.R.D. at 525.

Against this background, a settlement providing the substantial benefits afforded here represents an excellent result for the members of the proposed Settlement Class. BROSE's

$720,000.00 payment provides compensation that will be available years earlier than if litigation against BROSE continued through trial and appeal.  Settlements of this type create value beyond their direct pecuniary benefit to the class.  *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003); *In re Corrugated Container Antitrust Litig.*, 1981 WL 2093, *16 (S.D. Tex. Jan. 27, 1981 ("*Corrugated Container*").

The Settlement Agreement requires BROSE to provide cooperation to the ADs' counsel by providing transactional data, factual proffers, interviews, documents, depositions, and trial testimony, among other cooperation. *See* Settlement Agreement § F (¶¶ 35-48). This cooperation is valuable and will afford the ADs access to transactional data, documents, and witnesses without further litigation and expensive discovery—a significant class-wide benefit.  *See, e.g., In re Packaged Ice Antitrust Litig.*, Case No. 08-MD-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("Particularly where, as here, there is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant, this Court is reluctant to refuse to consider the very preliminary approval that will trigger that cooperation"); *see also Linerboard*, 292 F. Supp. 2d at 643; *Corrugated Container*, 1981 WL 2093, at *16; *cf. In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008) ("[T]he benefit of obtaining the cooperation of the Settling Defendants tends to offset the fact that they would be able to withstand a larger judgment.").

The Settlement Agreement does not alter joint and several liability of any non-settling Defendant or future Defendants for the full damages caused by the alleged conspiracies. *See* Settlement Agreement ¶ 55. In this regard, the Settlement Agreement is similar to other settlements approved in this litigation and one of the settlements approved in *Corrugated Container*, where the court noted the "valuable provision" under which plaintiffs reserved their right to recover full damages from other current or future defendants, less the actual amount of the initial settlement. 1981 WL 2093, at *17; *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248 (7th Cir. 1980); *In re Ampicillin Antitrust Litig.*, 82

11

F.R.D. 652, 654 (D.D.C. 1979) (approving settlement where class will "relinquish no part of its

potential recovery" due to joint and several liability).

> B.   **The Settlement Agreement is the Result of Thorough Arm's-Length Negotiations Conducted by Highly Experienced Counsel.**

This settlement is entitled to "an initial presumption of fairness" because it is the result of arm's-

length negotiations among experienced counsel.[3]   *Newberg* § 11.41. The judgment of proposed

Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class

"is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto

Component Carrier LCC*, Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich.

Oct. 18, 2010) (quoting *IUE-CWA*, 238 F.R.D. at 597); *see also Cardizem*, 218 F.R.D. at 525. Courts

give great weight to the recommendation of experienced counsel for the parties in evaluating the

adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the

issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed

settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake

Appalachia, L.L.C.*, 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs. Customer

Litig.*, 130 F.R.D. 366, 370 (S.D. Ohio 1990).   The Settlement Agreement here is the result of

substantial negotiations between counsel experienced in complex antitrust and consumer class action

litigation.   The amount of the settlement and the Settlement Agreement terms were negotiated by

Interim Co-Lead Class Counsel and counsel for BROSE. Interim Co-Lead Class Counsel undertook

a diligent and thorough investigation of the legal and factual issues posed by this litigation and

consulted extensively with experienced economists before negotiating this deal.

---

[3] The attorneys who negotiated the Settlement Agreement on behalf of both ADs and BROSE are highly experienced and capable. *See* Automobile Dealer Plaintiffs' Application For Appointment Of Interim Co-Lead Class Counsel And Liaison Counsel, *In re Automotive Wire Harness Sys. Antitrust Litig.*, Case No. 12-MD-02311 (E.D. Mich. Mar. 8, 2012), ECF No. 24.

Counsel for the ADs were well-informed about the facts and the strength of the claims asserted when the terms of the Settlement Agreement were initially negotiated and the information available to ADs and litigation progress far exceeded what has been approved by other courts. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.") (quotation marks and citation omitted); *Griffin v. Flagstar Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702 (same).

Moreover, these negotiations were adversarial and conducted in the utmost good faith. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008); *Bowers v. Windstream Ky. East, LLC*, Civil Action No. 3:09-CV-440-H, 2013 U.S. Dist. LEXIS 157242, at *5 (W.D. Ky. Nov. 1, 2013). There is nothing in the course of the negotiations or the substance of the settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

## II.   The Proposed Settlement Class Should be Provisionally Certified Pursuant to Rule 23.

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.32, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g., In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516-17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed settlement class satisfies the four prerequisites of Rule 23(a) (numerosity,

13

commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 U.S. Dist. LEXIS 140235, at *27-28 (E.D. Mich. Sept. 2, 2010).

While the Supreme Court recently reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *20-21 (E.D. Mich. Sept. 13, 2013) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013)). Permissible inquiry into the merits of plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the class certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013) ("*Amgen*") (citing *Dukes*, 131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *In re Whirlpool Corp.*, 722 F.3d 838, 851-52 (internal quotation marks and citation omitted). Here, as demonstrated below, even under a "rigorous analysis," the requirements of Rule 23 are easily met.

### A.    The Proposed Settlement Class Meets the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified in this District and elsewhere. ADs' allegations of "a per se violation of the antitrust laws are exactly the kind of allegations which may be proven on a class-wide basis through common proof." *In re Southeastern Milk Antitrust Litig.*, Master File No. 2:09-MD-1000, 2010 U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept. 7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price fixing cases, warranting

certification of the class even where significant individual issues are present." *Id.* at *33 (internal quotation marks and citations omitted). "As a rule of thumb, a price fixing antitrust conspiracy model is generally regarded as well suited for class treatment." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 409 (S.D. Ohio 2007); *see also Hyland v. Homeservices of Am., Inc.*, Case No. 3:05-CV-612-R, 2008 U.S. Dist. LEXIS 90892, at *12 (W.D. Ky. Nov. 6, 2008).

### i. The Proposed Settlement Class Members are so Numerous That it is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004)); *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

The proposed settlement class at issue in this action involves all automobile dealerships in the U.S. from January 1, 2004 through June 14, 2018 that purchased one or more new automobiles containing Side Door Latches and/or Latch Minimodules or that indirectly purchased one or more Side Door Latches and/or Latch Minimodules as replacement parts. Because there are thousands of such automobile dealerships geographically distributed throughout the United States, joinder is highly impractical, if not impossible, for all of the proposed Settlement Class.

### ii. Automobile Dealer Plaintiff Class Representatives and the Proposed Settlement Class Share Common Legal and Factual Questions.

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab.*

*Litig.*, 722 F.3d at 853; *see also Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *22 (one common question of law or fact is sufficient); *Griffin v. Flagstar Bancorp Inc.*, 2013 U.S. Dist. LEXIS 173702 (same); *Date v. Sony Elecs., Inc.*, Case No. 07-15474, 2013 U.S. Dist. LEXIS 108095, at *10 (E.D. Mich. July 31, 2013) (same).

This prerequisite is readily satisfied here because "antitrust price-fixing conspiracy cases, by their nature, deal with common legal and factual questions about the existence, scope and effect of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D. Kan. 1995). Thus, in price fixing cases, courts "have consistently held that the very nature of a conspiracy in an antitrust action compels a finding that common questions of law and fact exist." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006); *see also Newberg* § 3:10 at 278 ("[In an] antitrust action on behalf of purchasers who have bought defendants' products at prices that have been maintained above competitive levels by unlawful conduct, the courts have held that the existence of an alleged conspiracy or monopoly is a common issue that will satisfy the Rule 23(a)(2) prerequisite").

Through the course of this litigation, ADs have already identified the following issues common to the proposed Settlement Class:

- Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain, or stabilize the prices of Side Door Latches and Latch Minimodules sold in the United States;

- The identity of the participants of the alleged conspiracy;

- The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

- Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

- Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

- Whether the Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Class, thereby entitling Plaintiffs and the members of the Class to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

- Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Class;

- The effect of the alleged conspiracy on the prices of Side Door Latches and Latch Minimodules sold in the United States during the Class Period;

- Whether Plaintiffs and the members of the Class had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

- Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Class;

- The appropriate injunctive and related equitable relief for the Nationwide Class; and

- The appropriate class-wide measure of damages for the Damages Class.

(Side Door Latches Compl. ¶ 133) Any one of these substantive issues would, standing alone, establish the requisite commonality under Rule 23(a)(2).

### iii. Automobile Dealer Plaintiff Class Representatives' Claims are Typical of the Claims of the Members of the Proposed Settlement Class.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union, UAW v. Ford Motor Co.*, 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at *25 (quoting *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 405); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *In re Am. Med. Sys.*, 75 F.3d at 1082; *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *40-41. "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin v. Flagstar*

*Bancorp, Inc.*, 2013 U.S. Dist. LEXIS 173702, at \*17-18 (quotation marks and citation omitted); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at \*40 (same).

Because the AD Plaintiff Class representatives and the members of the proposed Settlement Class believe they are all victims of the conspiracies to fix prices, rig bids, and allocate the market and customers for Side Door Latches and seek the same relief, Rule 23(a)(3) is satisfied. *See Cason-Merenda*, 2013 U.S. Dist. LEXIS 131006, at \*26 (finding typicality met where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act.") (internal quotation marks and citation omitted)); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at \*40-41 ("Because all Class Members' claims arise from . . . a conspiracy to allocate markets in violation of the Sherman Act, their claims are based on the same legal theory and the typicality requirement . . . is met").

      iv.    **Proposed Settlement Class Counsel and Automobile Dealer Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Class.**

The final requirement of Rule 23(a) is that the representative parties "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "'1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 407 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

There are no conflicts between the ADs and the co-proposed Settlement Class because ADs and members of the proposed Settlement Class : (i) purchased in the United States new automobiles containing Side Door Latches and/or Latch Minimodules and/or (ii) indirectly purchased Side Door Latches and/or Latch Minimodules as replacement parts, all have the same interest in establishing liability, and all seek damages for the ensuing overcharge. *See In re Corrugated Container Antitrust Litig.*,

18

643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)). ADs and the members of the proposed Settlement Class also share a common interest in obtaining BROSE's cooperation.

Rule 23(g) requires the Court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class. The proposed Settlement Class is represented by counsel with extensive experience in antitrust and class action litigation. They have vigorously prosecuted the class claims, and they will continue to do so through all phases of the litigation, including trial. *See Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002) ("In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation"). The Court appointed Cuneo Gilbert & LaDuca, LLP, Barrett Law Group, P.A., and Larson • King, LLP as Interim Co-Lead Class Counsel in this action and the other automotive parts antitrust cases within Master File No. 2:12-md-2311. *See* Case Management Order No. 3 filed as ECF No. 271. For the same reasons that the Court appointed them to this position, it should appoint them Settlement Class Counsel here.

### B.     The Proposed Settlement Class Meet the Requirements of Rule 23(b)(3).

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable

management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

### i.  Common Questions of Law and Fact Predominate.

"Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *In re Whirlpool Corp.*, 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position.'" *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 307). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)); *cf. In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535-36 (holding issues regarding the amount of damages do not destroy predominance). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda v. VHS of Mich., Inc.*, 2013 U.S. Dist. LEXIS 131006, at *19-20 (quoting *Powers v. Hamilton Cnty. Public Defender Comm.*, 501 F.3d 595, 619 (6th Cir. 2007)). As pertinent to ADs' request here to provisionally certify the proposed Settlement Class under Rule 23(b)(3), the Supreme Court recently instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 133 S.Ct. at 1191.[4]

---

[4] The Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), supports the appropriateness of class certification under Rule 23(b)(3) here. In *Comcast*, the Supreme Court found that the plaintiffs failed to establish that damages could be measured on a class-wide basis because only one of the plaintiffs' four theories of antitrust impact could be proved in a manner common to the class. 133 S.Ct. at 1429-31. Under *Comcast*, plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability. *See Leyva v. Medline Indus, Inc.*, 716 F.3d 510 (9th Cir. 2013). Here, all of the proposed Settlement Class's claimed damages—the

Because the proposed Settlement Class alleges conduct from which all proposed Settlement Class Members' alleged injuries arise, issues common to the proposed Settlement Class Members— for example, the existence and scope of the alleged price-fixing conspiracy or conspiracies among Defendants, the market impact of Defendants' conspiracy or conspiracies, and the aggregate amount of damage suffered by the class as a result of the alleged antitrust violations—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *see also In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 254 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") (quoting NEWBERG ON CLASS ACTIONS § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the *conspiracy* is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 535 (quoting *Amchem*, 521 U.S. at 625).[5] Furthermore, here the evidence that will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is not dependent on the separate conduct of the individual Settlement Class Members. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

---

overcharge suffered as a result of inflated automobile components—stem from the Defendants' alleged price-fixing conspiracies.

[5] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001); *In re Blood Reagents Antitrust Litig.*, 283 F.R.D. 222, 234 (E.D. Pa. 2012); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 581 (N.D. Ill. 2009); *In re Urethane Antitrust Litig.*, 251 F.R.D. 629, 634 (D. Kan. 2008); *Foundry Resins*, 242 F.R.D. at 408.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones, *e.g.*, as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See, e.g.*, *In re Whirlpool Corp.*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance).   Issues common to the proposed Settlement Class predominate in this case—all ADs allegedly paid overcharges that were caused by the Defendants' price-fixing activities. The presence of these common issues of liability and impact predominates over any individual issues and strongly support provisional certification of the proposed Settlement Class.

ii.      **A Class Action is the Superior Method to Adjudicate These Claims.**

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (N.D. Ohio Mar. 8, 2010).

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 678 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of Settlement Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200

F.R.D. at 325-26 (finding that class action is superior because it ensures fair and efficient adjudication). Thousands of new-car dealerships purchased automobiles containing Side Door Latches and/or Latch Minimodules as a component part and/or indirectly purchased Side Door Latches and/or Latch Minimodules as a replacement part for an automobile during the class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See, e.g., In re Foundry Resins*, 242 F.R.D. at 411-12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results").[6]

### C.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(2).

If the requirements of Rule 23(a) are met, the Court may also certify a class under Rule 23 (b)(2) where: "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ."  Claims for non-monetary relief, like those asserted under state laws that do not recognize claims for money damages by indirect purchaser in antitrust actions, are properly certified under Rule 23(b)(2). *See* Settlement Agreement, ¶ 28.

### III.   Notice to the Class Members.

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  With regard to class action claims that are settled, Rule 23(e) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the

---

[6] Another criterion of Rule 23(b)(3) is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

proposal." Fed. R. Civ. P. 23(e)(1). "[D]ue process does not require actual notice, but rather a good faith effort to provide actual notice." *Thacker*, 259 F.R.D. at 271-72. To comport with the requirements of due process, notice must be "reasonably calculated to reach interested parties." *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008) (citing *Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 283 (6th Cir. 2005)).

Interim Co-Lead Class Counsel request that the Court allow them to defer providing notice of this settlement until a later time. ADs will submit a motion for leave to disseminate notice and that motion will include a proposed form of, method for, and date of dissemination of notice.

## CONCLUSION

For the foregoing reasons, ADs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Class;

3. Staying the proceedings against BROSE in accordance with the terms of the Settlement Agreement;

4. Authorizing Settlement Class Counsel to provide notice of the Settlement Agreement to members of the Settlement Class at a later time; and

5. Appointing Interim Co-Lead Class Counsel for the ADs as Settlement Class Counsel for this settlement.

Dated: August 17, 2018

By: /s/ Gerard V. Mantese
Gerard V. Mantese (P34424)
**MANTESE HONIGMAN, P.C.**
1361 E. Big Beaver Road
Troy, MI 48083
Telephone: (248) 457-9200 Ext. 203
Facsimile: (248) 457-9201
gmantese@manteselaw.com

*Interim Liaison Counsel for the Automobile Dealer Plaintiffs*

Jonathan W. Cuneo
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com

Don Barrett
**BARRETT LAW GROUP, P.A**.
P.O. Box 927
404 Court Square
Lexington, MS 39095
Telephone: (662) 834-2488
Facsimile: (662)834.2628
dbarrett@barrettlawgroup.com

Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
Telephone: (651) 312-6500
Facsimile: (651) 312-6618
sraiter@larsonking.com

*Interim Co-Lead Counsel for the Automobile Dealer Plaintiffs*

## CERTIFICATE OF SERVICE

I, Gerard V. Mantese, hereby certify that I caused a true and correct copy of **AMENDED MOTION AND AMENDED MEMORANDUM IN SUPPORT OF AUTOMOBILE DEALER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH BROSE DEFENDANTS AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS** to be served via e-mail upon all registered counsel of record via the Court's CM/ECF system on August 17, 2018.

/s/ Gerard V. Mantese
Gerard V. Mantese